UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

JERMAINE BARNES,                              :

                Petitioner,          :     **MEMORANDUM DECISION**

       - v -                              :     21-cv-6235 (DC)

DANIELLE TOPE,                                :

                Respondent.         :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

APPEARANCES:          JERMAINE BARNES
                      *Petitioner Pro Se*
                      #262251
                      Central New York Psychiatric Center
                      P.O. Box 300
                      Marcy, NY 13403

                      LETITIA JAMES, Esq.
                      Attorney General, State of New York
                      By:     Andrew W. Amend, Esq.
                              Cleland B. Welton II, Esq.
                              Assistant Solicitors General
                      28 Liberty Street
                      New York, New York 10005
                              Attorney for Respondent

CHIN, Circuit Judge:

        In this case, Petitioner Jermaine Barnes seeks federal habeas review of a

state court civil-commitment order.  He was convicted of multiple sex crimes in 1989

and 2000.  In 2019, as Barnes was approaching the completion of his prison term, the
Supreme Court, Queens County (Latella, Jr., *J.*) adjudicated Barnes as a dangerous sex
offender requiring confinement under Article 10 of the New York Mental Hygiene Law,
also known as the Sex Offender Management and Treatment Act ("SOMTA").  The
Appellate Division, Second Department affirmed the adjudication, *Matter of State of New
York v. Jermaine B.*, 191 A.D.3d 888 (2d Dep't 2021) ("*Barnes I*"), and the Court of Appeals
of New York denied his application for leave to appeal.  *Barnes v. State of New York,* 173
N.E.3d 424 (N.Y. 2021) ("*Barnes II*").

   While his appeal was pending in the Second Department, Barnes filed a
petition for release under New York Mental Hygiene Law § 10.09 in the Supreme Court,
Oneida County.  On November 5, 2021, the Oneida court ruled that Barnes remained a
dangerous sex offender who required confinement; it then entered an order continuing
Barnes's confinement under Article 10.  Barnes did not file a notice of appeal and
remains confined in a treatment facility.

   On November 5, 2021, Barnes filed a *pro se* petition for a writ of habeas
corpus under 28 U.S.C. § 2254 in this Court (the "Petition").  Dkt. 1.  Liberally construed,
the Petition challenges both the original 2019 adjudication as well as the 2021 order to
continue his confinement.  Barnes contends that his constitutional rights were violated
in three ways: (1) he is "being held in prison for no criminal reason"; (2) he was "held in

maximum security prison during [his Article 10 pretrial] hearings"; and (3) during his

Article 10 trial, he was " held in jail" for "no criminal reason, without bail." *Id.* at 5-8.

On April 13, 2022, Respondent Danielle Tope, represented by The New

York State Attorney General's Office, moved to file his opposition memorandum and

the state-court record under seal on the basis that New York Mental Hygiene Law

§§ 10.08 and 33.13 require clinical reports and other materials considered in proceedings

to classify a person as a dangerous sex offender be kept confidential.  Dkt. 11.  This

Court (Kovner, *J.*) then ordered the People to file a letter brief "explaining why sealing

the entire memorandum and state-court record [was] appropriate as opposed to

redacting confidential information." *See* Dkt. Entry dated Apr. 14, 2022.  The People

complied with the order. *See* Dkt. 14.  This Court granted the motion in part, explaining

that "New York Mental Hygiene Law §§ 10.08 and 33.13 render a substantial portion of

the state court record confidential such that redaction would be impractical."  Dkt. Entry

dated May 2, 2022.  It ordered that the state-court record be filed under seal "with the

exception of the Appellate Division's decision." *Id.*  It then directed the People to file a

public version of its memorandum "redacting [the] confidential information." *Id.*  The

People did so on May 6, 2022.  Dkt. 15.

On October 25, 2023, the case was reassigned to the undersigned. *See* Dkt.

Entry dated Oct. 25, 2023.

For the reasons that follow, the Petition is DENIED.

3

## STATEMENT OF THE CASE

**A.     The Facts and State-Court Proceedings**

The facts and state-court proceedings outlined below are derived largely from the "public" opposition memorandum filed on May 6, 2022.  Dkt. 15.[1]

**1.     The Underlying Conduct**

Barnes has been convicted of multiple sex crimes.  Dkt. 11-3 at 290-93.  In his most recent conviction in 2000, he was sentenced to 20 years' imprisonment on one count and 42 to 84 months' imprisonment on a second count.  *Id.* at 290.  The sentences were ordered to run concurrently.  *Id.*  Although not disclosed in the People's public memorandum, Barnes also received dozens of disciplinary tickets while incarcerated, including many for sex-related violations.  *Id.* at 293-96.

**2.     The Article 10 Petition, Initial Proceedings, and Pretrial Proceedings**

Barnes was scheduled to be released from prison on February 26, 2018.  Dkt. 15 at 8 (citing Dkt. 11-3 at 286).  "As that date neared, state prison officials notified [the New York State Office of Mental Health (the "OMH")] of Barnes's eligibility for [A]rticle 10 management."  *Id.* (citing Dkt. 11-3 at 331).  Shortly thereafter, the OMH

---

[1] The Court had access to and reviewed the People's opposition memorandum and the state-court record filed under seal.  *See* Dkt. 11.  Because the state-court record is sealed (with the exception of the Appellate Division's decision), I do not recount the details of Barnes's crimes and infractions, but the details are laid out in the state-court record and provide ample support for the state courts' rulings.  *See* Dkt. 11-5 at 564-69; Dkt. 11-6 at 615-16.

"concluded that Barnes required civil management and so notified the Attorney General." *Id.*

On February 13, 2018, the State filed an Article 10 petition in the Supreme Court, Dutchess County. *Id.* (citing Dkt. 11-3 at 286-303). The petition included the report of Dr. Trevor Floyd, an OMH psychologist. *Id.* at 9 (citing Dkt 11-3 at 306-24).

One week later, before Barnes's criminal sentence expired, the Supreme Court, Dutchess County conducted a preliminary hearing in the Article 10 case. *Id.* (citing Dkt. 11-6 at 634-48). During the hearing, which Barnes attended, the State advised that it was "willing to go forward with an immediate probable-cause hearing pursuant to [Mental Hygiene Law] § 10.06(h)." *Id.* at 9-10 (citing Dkt. 11-6 at 635, 645). Through his counsel, Barnes requested permission to "make a motion to dismiss [the Article 10] petition prior to the scheduling of a Probable Cause Hearing." *Id.* at 10 (quoting Dkt. 11-6 at 645-46). Barnes's counsel stated "that 'beginning the Probable Cause Hearing would unduly prejudice the legal rights of her client with respect to the issues to be raised in the motion' to dismiss." *Id.* (alterations adopted) (citing Dkt. 11-6 at 646).

Counsel for the State explained that delaying the probable-cause hearing meant that Barnes would have to remain in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"). In other words, because an Article 10 respondent cannot enter OMH custody until after a probable-

cause hearing, opting not to conduct an immediate probable-cause hearing would result in Barnes remaining in the custody of DOCCS. *Id.* (citations omitted). Barnes and his counsel did not object or suggest that he wished to proceed with the probable-cause hearing. *Id.* With the parties' consent, the court scheduled a hearing on the motion to dismiss for May 11, 2018. Accordingly, Barnes remained in prison after the end of his criminal sentence. *Id.* (citing Dkt. 11-6 at 646).

While the parties were briefing the motion to dismiss, the State moved for leave to file an amended petition. *Id.* at 11 (citation omitted). "The proposed amended petition provided additional information to support the State's position that Barnes suffer[ed] from a mental abnormality." *Id.* On May 11, 2018, with Barnes present, the Supreme Court, Dutchess County held a hearing on the competing motions.

On June 19, 2018, the court issued a written decision denying Barnes's motion to dismiss and granting the State's motion to amend. *Id.* (citations omitted). It specifically noted that the proposed amended petition "provided grounds to believe that [Barnes was] a dangerous sex offender requiring confinement." *Id.* at 11-12 (citation omitted).

On June 20, 2018, the court held another hearing. At this hearing, Barnes stated that he wanted to transfer to OMH custody as soon as possible and was prepared to waive the probable-cause hearing. *Id.* at 12 (citing Dkt. 11-6 at 666). Under oath, Barnes confirmed that he understood that he had a right to a probable-cause hearing

6

but opted to waive it, conceding that the State had established probable cause sufficient to support detaining him pending trial. *Id.* (citing Dkt. 11-6 at 670-75). The next day, the court issued an order finding that there was sufficient probable cause to believe that Barnes was a sex offender requiring civil management under New York Mental Hygiene Law § 10.06(k). The court directed that Barnes be committed to an OMH facility pending trial completion or other disposition of his case. *Id.* (citations omitted). "Pursuant to that order, Barnes was admitted to the Central New York Psychiatric Center (CNYPC)." *Id.* (citations omitted). The court also granted Barnes's request to transfer the case to the Supreme Court, Queens County to be closer to his family. *Id.* (citations omitted).

### 3.    *The Mental-Abnormality Trial*

In March 2019, the Supreme Court, Queens County conducted a four-day jury trial on Barnes's mental abnormality. *Id.* at 13 (citations omitted). On March 14, 2019, the jury returned a unanimous verdict, finding that the State had proven, by clear and convincing evidence, Barnes's mental abnormality under Article 10. *Id.* at 17 (citation omitted).

### 4.    *The Disposition Hearing*

Following the trial, the Supreme Court, Queens County proceeded to a disposition hearing to determine whether Barnes was a dangerous sex offender requiring confinement. *Id.* (citation omitted). The court found by clear and convincing

7

evidence that Barnes was a dangerous sex offender requiring confinement. *Id.* at 21 (citation omitted).

On July 17, 2019, the court issued a decision and order directing that "Barnes be 'committed to a secure treatment facility designated by the New York State Commissioner of Mental Health,' where he is to 'receive care and treatment pursuant to Mental Hygiene Law Article 10.'" *Id.* at 21 (citation omitted). The order further directed that Barnes receive at least an annual written notice of his right to petition the Court for discharge and that he retains his right to petition for discharge or release. *Id.* (citation omitted).

5.    *The Direct Appeal*

Barnes appealed the commitment order to the Appellate Division, Second Department, asserting the following claims: (1) the court should have dismissed the Article 10 proceeding "because the initial petition had not asserted a sufficient basis to support a confinement order"; (2) he was denied a fair trial when the trial court failed to issue a "'missing witness' charge when the State opted not to call Dr. Floyd at the mental abnormality trial"; and (3) the evidence presented at trial was legally insufficient to support the jury's abnormality finding and the subsequent trial court's determination to commit Barnes to a secure treatment facility. *Id.* at 21-22 (citations omitted). Notably, Barnes did not raise arguments, as he does in his present habeas petition, regarding the purported unlawfulness of his Article 10 confinement without criminal reason or the

8

invalidation of the trial proceedings due to his detention before and during the Article

10 trial. *Id.* at 22 (citations omitted).

On February 17, 2021, the Appellate Division, Second Department

affirmed the commitment order. *Barnes I,* 191 A.D.3d at 888. It held: (1) the pretrial

court properly granted the State's motion to amend the petition, finding no palpable

insufficiency or lack of merit in the amended petition and no prejudice or surprise to

Barnes resulting from the amendment; (2) the evidence was legally sufficient to support

the jury's mental abnormality finding, the jury's verdict was not contrary to the weight

of the evidence, and, based on clear and convincing evidence, the trial court properly

determined that Barnes's level of dangerousness required confinement rather than strict

and intensive supervision; and (3) the trial court properly denied Barnes's request for a

missing witness instruction because Barnes "failed to demonstrate that the witness

would offer noncumulative testimony." *Id.* at 889-90.

Shortly thereafter, Barnes moved for leave to appeal. On September 2,

2021, the New York Court of Appeals denied his request. *Barnes II,* 173 N.E.3d at 424.

6.   *The Petition for Release*

In August 2020 (while his appeal was pending in the Second Department),

Barnes filed a petition for release under New York Mental Hygiene Law § 10.09 in the

Supreme Court, Oneida County. Dkt. 15 at 23 (citation omitted). "The petition was

transferred to Oneida County Court," which granted Barnes's requests to appoint

counsel and a psychologist to conduct an independent examination. *Id.* (citation

omitted). "The only issue raised [in] the petition was whether Barnes continue[d] to

suffer from a mental abnormality that render[ed] him so dangerous as to require

confinement" under Article 10. *Id.* (citation omitted).

On August 27, 2021, the court held a hearing; it later issued an opinion on

November 5, 2021. *Id.* at 23-24. It determined that clear and convincing evidence

established that Barnes suffered from a mental abnormality and lacked control over his

behavior -- that is, he was "likely to be a danger to others and . . . commit sex offenses if

not confined to a secure treatment facility." *Id.* at 24 (citation omitted). In light of its

determination, the court directed Barnes's continued confinement under Article 10. *Id.*

at 25 (citation omitted).

On November 16, 2021, the court ordered the continuation of Barnes's civil

commitment, care, and treatment under Article 10 of the New York Mental Hygiene

Law. *Id.* at 25-26 (citations omitted). It also reaffirmed that Barnes retained his right to

receive annual reviews of his confinement and petition the court for discharge at any

time. *Id.* (citations omitted).

Barnes did not file a notice of appeal. *Id.* at 26.

**B.**    ***The Petition***

On November 5, 2021, proceeding *pro se*, Barnes filed the Petition

pursuant to 28 U.S.C. § 2254. Dkt. 1. In the Petition, Barnes contends that his

constitutional rights were violated in three ways: (1) he is "being held in prison for no criminal reason"; (2) he was "held in maximum security prison during [his Article 10 pretrial] hearings"; and (3) during his Article 10 trial, he was "held in jail" for "no criminal reason, without bail." *Id.* at 5-8.

The New York State Attorney General's Office filed its sealed opposition memorandum on April 13, 2022, *see* Dkt. 11-1, and its "public" opposition memorandum on May 6, 2022, Dkt. 15. Barnes did not file a reply.

On October 25, 2023, the case was reassigned to the undersigned.

## DISCUSSION

I.  *Federal Habeas Review of State-Commitment Orders*

Pursuant to Article 10 of the New York State Mental Hygiene Law, "sex offenders who suffer from mental abnormalities that predispose them to commit repeated sex crimes" may be confined in a secure treatment facility until the risk abates. *Matter of State v. Dennis K.*, 27 N.Y.3d 718, 726 (N.Y. 2016) (citing N.Y. Mental Hygiene Law §§ 10.01, 10.03). Article 10 prescribes comprehensive procedures for determining whether a convicted sex offender will be detained beyond the completion of his prison term. *See* N.Y. Mental Hygiene. Law § 10.06. The process includes judicial review. In a bifurcated proceeding, first a jury (or a judge if the right to a jury is waived) determines whether the State has shown by clear and convincing evidence that the respondent suffers from a "mental abnormality" as defined in the Mental Hygiene Law. *Id*.

11

§ 10.07(d).   If so, in the second phase the court must determine by clear and convincing

evidence whether the respondent is a "dangerous sex offender requiring confinement."

*Id*. § 10.07(f); *see also id*. § 10.03(r) (defining "[s]ex offender requiring strict and intensive

supervision").   If so, the court is to order the respondent civilly committed for further

care and treatment.   If the court determines that the respondent does not meet the

criteria, the respondent is to be released under strict supervision and treatment.   *Id*.

Federal habeas review is available to challenge the legality of state court

civil-commitment orders.   *Duncan v. Walker*, 533 U.S. 167, 176 (2001); *accord Richard S. v.*

*Carpinello*, 589 F.3d 75, 76-77, 80 (2d Cir. 2009) (acknowledging federal habeas review

pursuant to 28 U.S.C. § 2254 of a state court commitment order under the New York

Mental Hygiene Law); *Buthy v. Comm'r of Off. of Mental Health of N.Y.*, 818 F.2d 1046,

1051-52 (2d Cir. 1987) (holding that a petitioner "could challenge the fact of his

[involuntary] pre-hearing confinement in the [psychiatric] unit . . . only by petitioning

for a writ of habeas corpus" (collecting cases)).

A federal court cannot review a habeas petition unless the petitioner "has

exhausted the remedies available" in state courts.   28 U.S.C. § 2254(b)(1)(A).   This

requirement affords state courts the "opportunity to pass upon and correct alleged

violations of its prisoners' federal rights."   *Jackson v. Edwards*, 404 F.3d 612, 619 (2d Cir.

2005) (quoting *Picard v. Connor*, 404 U.S. 270, 275 (1971)).   "This requires that the

prisoner 'fairly present' his constitutional claim to the state courts, which he

12

accomplishes 'by presenting the essential factual and legal premises of his federal constitutional claim to the highest state court capable of reviewing it.'" *Jackson v. Conway*, 763 F.3d 115, 133 (2d Cir. 2014) (quoting *Rosa v. McCray*, 396 F.3d 210, 217 (2d Cir. 2005)).  This exhaustion requirement applies to habeas petitions challenging civil-commitment orders.  *See Buthy*, 818 F.2d at 1051-52 (holding that, when challenging  a civil-commitment order, a petitioner must "exhaust[] state remedies as required by 28 U.S.C. § 2254(b), (c)" before petitioning for a writ of habeas corpus (collecting cases)).  There are, however, two exceptions to the exhaustion requirement: (1) "there is an absence of available State corrective process"; or (2) "circumstances exist that render such process ineffective to protect the rights of the applicant."  *See, e.g.*, 28 U.S.C. § 2254(b)(1)(B)(i)-(ii).

## II.   *Analysis*

In the Petition, Barnes contends that his constitutional rights were violated in three ways: (1) he is "being held in prison for no criminal reason"; (2) he was "held in maximum security prison during [his Article 10 pretrial] hearings"; and (3) during his Article 10 trial, he was "held in jail" for "no criminal reason, without bail."  Dkt. 1 at 5-8. I address first the procedural bar and then the merits of each claim in turn.

### A.   *Procedural Bar*

As a threshold matter, Barnes's claims are unexhausted; he concedes that he did not raise these arguments on direct appeal.  Dkt. 1 at 5-8.  Habeas relief is thus

not available to Barnes for his claims. A federal court cannot review a habeas petition

unless the petitioner "has exhausted the remedies available" in state courts. 28 U.S.C.

§ 2254(b)(1)(A); *see, e.g., Conway*, 763 F.3d at 133 (explaining that habeas relief is only

available after a prisoner has "'fairly present[ed]' his constitutional claim to the state

courts, which he accomplishes 'by presenting the essential factual and legal premises of

his federal constitutional claim to the highest state court capable of reviewing it.'"

(quoting *Rosa*, 396 F.3d at 217)); *Buthy*, 818 F.2d at 1051-52 (holding that, when

challenging  a civil-commitment order, a petitioner must "exhaust[] state remedies as

required by 28 U.S.C. § 2254(b), (c)" before petitioning for a writ of habeas corpus

(collecting cases)).

Moreover, the exceptions to the exhaustion requirement are not available

to Barnes. *See* 28 U.S.C. § 2254(b)(1)(B)(i)-(ii). In addition to not raising his claims on

direct appeal, Barnes also failed to raise his claims in his 2020 petition for release, the

denial of which he did not appeal. *See* N.Y. Mental Hygiene Law § 10.09 (outlining that

a petitioner has the right seek discharge from civil commitment annually); *id.* § 10.13

(outlining that a petitioner can appeal the denial of his petition for discharge). Because

Barnes did not pursue these state-court procedures, and there is nothing in the record to

suggest that circumstances existed that rendered the procedures ineffective to protect

his rights, he is not entitled to federal habeas review. *See* 28 U.S.C. § 2254(b)(1)(B)(i)-(ii).

As discussed below, Barnes's claims also fail on the merits.[2]

**B.**     *The Merits*

**1.**     *"No criminal reason"*

Barnes first argues that his constitutional rights were violated because he is "being held in prison for no criminal reason." Dkt. 1 at 5. Specifically, he contends that he has been incarcerated for "3 years and 9 months based on sex offenses that [he] . . . already served . . . time for." *Id.*

Despite his contentions to the contrary, the state-court record makes clear that Barnes is not being "held in prison" for crimes for which he already served time. He is in a civil commitment at CNYPC, a secure OMH-owned treatment facility, pursuant to Article 10 of the New York Mental Hygiene Law. *See* Dkt. 1 at 1 (listing CNYPC as his place of confinement); N.Y. Mental Hygiene Law § 10.01(c) (finding that civil commitment is an appropriate response "to the need for treatment of sex offenders"). New York courts have recognized that Article 10 "is not a penal statute, but rather one with a remedial purpose." *Matter of State of New York v. Floyd Y.*, 2 N.E.3d 204, 210 (N.Y. 2013) (collecting cases). Controlling state-law precedent makes clear that

---

[2] I note that Barnes made more substantive arguments as to the merits in his direct appeal to the Appellate Division, including challenging the sufficiency of the evidence. While Barnes has not raised these arguments in the Petition, the Appellate Division addressed his arguments on the merits, *see Barnes I*, 191 A.D.3d at 888, and the Appellate Division's rulings are reasonable. *See id.*

"when the state acts through its parens patriae power to confine a sex offender for therapy and treatment, commitment proceedings are civil, not criminal, in nature." *Id.* at 209 (citations omitted). Similarly, the Supreme Court has explained that "a civil commitment proceeding can in no sense be equated to a criminal prosecution." *Addington v. Texas*, 441 U.S. 418, 428 (1979) (citation omitted). As applied here, Article 10 serves the lawful objectives of (1) safeguarding the public from an individual who is "likely to be a danger to others and to commit sex offenses if not confined to a secure treatment facility," N.Y. Mental Hygiene Law § 10.03(e), and (2) ensuring the individual receives the appropriate treatment. *See Floyd Y.*, 2 N.E.3d at 210; *see also Addington*, 441 U.S. at 426 (explaining that the state has a legitimate interest in the two objectives mentioned above). The fact that Barnes's civil commitment relates to crimes for which he has been convicted and served time does not alter the nature or legality of his confinement.

To the extent that Barnes asserts that the state courts violated due process by applying the wrong standard of proof, his claim still fails. The Supreme Court has held that "[a] 'clear and convincing' standard of proof is required by the Fourteenth Amendment in a civil proceeding brought under state law to commit an individual involuntarily for an indefinite period to a state mental hospital." *Addington*, 441 U.S. at 418. Here, the Supreme Court, Queens County and Oneida County Court -- which held the mental-abnormality trial and disposition hearing, respectively -- both applied the

16

applicable standard to determine that Barnes suffered from a mental abnormality

involving a strong predisposition to commit sex offenses and lacked control over his

behavior.  *See* Dkt. 15 at 17-23 (citation omitted).  Thus, the Article 10 proceedings in

this case fell squarely within the substantive due process requirements outlined by the

Supreme Court.  *See Addington*, 441 U.S. at 418, 433.

      Accordingly, Barnes is not entitled to habeas relief on this basis.

      **2.**     *Maximum Security Prisons (before the Mental-Abnormality Trial)*

      Barnes next argues that his constitutional rights were violated because

from February 26, 2018, to July 25, 2018, he was "held in maximum security prison[s]"

before his Article 10 proceedings.  Dkt. 1 at 6.  Specifically, he claims that he "was

virtually tortured into waiving hearings" because he was being held at Green Haven

and Clinton Correctional Facilities, which required him to travel handcuffed and

shackled on a prison bus for nine hours to and from court.  *Id.*

      Where, as here, a respondent is "not at liberty" when an Article 10 petition

is filed, "but becomes eligible to be released prior to the probable cause hearing, the

court shall order the stay of such release pending the probable cause hearing."  N.Y.

Mental Hygiene Law § 10.06(h).  When a court issues such an order, the hearing shall

commence no later than seventy-two hours from the date of the respondent's

anticipated release date unless: "(i) the failure to commence the hearing was due to the

respondent's request, action or condition, or occurred with his or her consent; or (ii) the

court is satisfied that the attorney general has shown good cause why the hearing could not so commence." *Id.*

Barnes was scheduled to be released from prison on February 26, 2018. Dkt. 15 at 8. On February 13, 2018, the State filed an Article 10 petition in the Supreme Court, Dutchess County. On February 20, 2018, the court convened a hearing to proceed with a probable-cause determination. During the hearing -- at which Barnes was present -- the State advised that it was "willing to go forward with an immediate probable-cause hearing pursuant to [Mental Hygiene Law] § 10.06(h)." *Id.* at 9-10 (citation omitted). Through his counsel, Barnes requested permission to "make a motion to dismiss [the Article 10] petition prior to the scheduling of a Probable Cause Hearing." *Id.* at 10 (citation omitted). Barnes's counsel stated "that 'beginning the Probable Cause Hearing would unduly prejudice the legal rights of her client with respect to the issues to be raised in the motion' to dismiss." *Id.* (alterations adopted) (citation omitted). Counsel for the State explained that delaying the probable-cause hearing meant Barnes would have to remain in the custody of DOCCS. Despite this warning, Barnes and his counsel did not object or suggest that he wished to proceed with the probable-cause hearing. With the parties' consent, the court scheduled a hearing on the motion to dismiss for May 11, 2018. Accordingly, Barnes remained in prison after the end of his criminal sentence. *Id.* (citation omitted). Because the failure to commence the probable-cause hearing was due to Barnes's request and occurred with

18

his consent, his continued confinement until the probable-cause hearing was not

unlawful.  *See* N.Y. Mental Hygiene Law § 10.06(h).

It was not until June 20, 2018, that Barnes advised that he wanted to

transfer to OMH custody as soon as possible and was prepared to waive the probable-

cause hearing.  Under oath, Barnes confirmed that he understood that he had a right to

a probable-cause hearing but opted to waive it, conceding that the State had established

probable cause sufficient to support detaining him pending trial.  Dkt. 15 at 12 (citation

omitted).  The next day, the court issued an order finding that there was sufficient

probable cause to believe that Barnes was a sex offender requiring civil management

under New York Mental Hygiene Law § 10.06(k).  The court directed that Barnes be

committed to an OMH facility pending trial completion or other disposition of his case.

*Id.* (citation omitted).  Pursuant to that order, Barnes was admitted to the CNYPC.  *Id.*

(citation omitted).  Nothing in the record suggests that Barnes was coerced into waiving

the attempted reasonable-cause hearing on February 20, 2018, or the subsequent hearing

on June 20, 2018.  In both instances, Barnes stated on the record these decisions were

made willingly and with the advice of counsel.  Statements made under oath in court

"carry a strong presumption of verity." *United States v. Freeman*, 17 F.4th 255, 265 (2d

Cir. 2021) (quoting *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)).

Further, his placement at Clinton Correctional Facility was due to his

"ongoing disturbing behaviors." Dkt. 15 at 37-38 (citing Dkt. 11-4 at 427).  Again, there

is no evidence suggesting that the transfer aimed to coerce Barnes into waiving hearings or other rights, as it was a response to misconduct while he chose to remain in DOCCS custody.

Finally, to the extent Barnes is challenging the conditions of his confinement in 2018, this habeas petition is not the appropriate vehicle for addressing this claim. *See, e.g., Buthy*, 818 F.2d at 1051 (explaining that petitioning for a writ of habeas corpus, after fully exhausting state-court remedies, is the appropriate method for a petitioner to "challenge the fact of his pre-hearing confinement [at a OMH facility]," but not "the conditions of that confinement" (collecting cases)).

Accordingly, Barnes is not entitled to habeas relief on this basis.

### 3. Held "without bail" (during the Mental-Abnormality Trial)

Barnes's final argument is that he was held in Rikers Island (a county jail) "for no criminal reason, without bail" during the Article 10 trial process (January 9, 2019, to June 27, 2019). Dkt. 1 at 8. Barnes is referencing his temporary transfer from CNYPC to Rikers Island. The People contend that Barnes was transferred to Rikers Island to "facilitate his preparation for and participation in his mental abnormality trial," which was being held, at Barnes's request, in the Supreme Court, Queens County. Dkt. 15 at 40 (citing Dkt. 11-3 at 279).

New York Correction Law provides that county jails shall be used "[f]or the confinement of persons during any proceedings pursuant to article ten of the mental

hygiene law." N.Y. Correct. Law § 500-a1.(f).  Under the statute, "OMH is vested with

the discretion to make determinations with respect to the placement of pre-

determination detainees under [A]rticle 10." *D.S. v. Hogan*, 22 Misc. 3d 527, 537 (N.Y.

Sup. Ct. 2008).  In other words, "offenders subject to a probable cause determination

should be kept in secure treatment facilities but may also be kept for discrete periods

where necessary in local jails during any [A]rticle 10 proceedings." *Id.* at 536.  As such,

"[i]n the period immediately prior to and during trial proceedings . . . [Barnes] could be

confined at Rikers where he would have ready access to counsel visits." *Id.* at 543.

Accordingly, Barnes's constitutional rights were not violated by being held in Rikers

Island. *Id.* at 536-37, 543.

Further, Barnes's constitutional rights were not violated because he did

not receive bail.  The New York Mental Hygiene Law makes clear that when probable

cause has been established, and the case is proceeding to a mental-abnormality trial, the

court shall "order that the respondent be committed to a secure treatment facility"

pending the conclusion of the trial.  N.Y. Mental Hygiene Law § 10.06(k).  The statute

makes no mention of bail.  *See id.*  Because "a finding of probable cause to believe that

an [A]rticle 10 sex offender requires civil management because of mental abnormality

incorporates the necessary finding of a respondent's dangerousness," all Article 10 "sex

offenders, therefore, come within the scope of those statutes upheld by the United

States Supreme Court that authorize commitment or detention, even pretrial detention,

21

without mandating consideration of a lesser restrictive alternative." *State v. Enrique T.,* 93 A.D.3d 158, 166 (1st Dep't 2012); *see, e.g., State v. Kerry K.,* 188 A.D.3d 30, 34 (2d Dep't 2020) (noting that the Second Department "see[s] no reason to depart from" *Enrique*). Thus, even if New York Hygiene Law allows for an Article 10 respondent to be released on bail, such a policy would be "discretionary," not constitutionally mandated. *Enrique T.,* 93 A.D.3d at 166-67.

Moreover, again, to the extent that Barnes is challenging his confinement in 2019 at Rikers Island instead of at CNYPC, this habeas petition is not the appropriate vehicle for raising the claim. *See, e.g., Buthy,* 818 F.2d at 1051 (explaining that petitioning for a writ of habeas corpus, after fully exhausting state-court remedies, is the appropriate method for a petitioner to "challenge the fact of his pre-hearing confinement [at a OMH facility]," but not "the conditions of that confinement" (collecting cases)); *see also D.S.,* 22 Misc. 3d at 536 ("offenders subject to a probable cause determination should be kept in secure treatment facilities but may also be kept for discrete periods where necessary in local jails during any [A]rticle 10 proceedings").

Accordingly, Barnes is not entitled to habeas relief on this basis.

## CONCLUSION

Barnes has failed to show any basis for relief under 28 U.S.C. § 2254. Accordingly, the Petition is denied. Additionally, I decline to issue a certificate of appealability because Barnes has not made a substantial showing of the denial of a

constitutional right.  *See* 28 U.S.C. § 2253(c)(2).  Pursuant to 28 U.S.C. § 1915(a)(3), I certify that any appeal taken from this decision and order would not be taken in good faith.

The Clerk of Court is respectfully directed to mail a copy of this memorandum decision and the judgment to Barnes at his last address of record.

Finally, I note that Barnes has remained in confinement for six years beyond the completion of his criminal sentence.  This is of concern.  But Barnes has not raised the length of his civil confinement as an issue, and he did not appeal the November 16, 2021 order continuing his confinement.  Moreover, Barnes has remedies under state law, as he is entitled, under the New York Mental Hygiene Law, to annual reviews of his confinement and to petition the state court for discharge at any time.  *See* page 10 *supra*.

SO ORDERED.

Dated:     New York, New York
           March 26, 2024

DENNY CHIN
United States Circuit Judge
Sitting By Designation